WILLIAM LEMKE, APPELLEE, V. JOHN LEMKE ET AL., APPELLANTS.

FILED MARCH 7, 1907. No. 14,702.

1. **Pleading: NEGATIVE PREGNANT.** A negative pregnant is such a form of negative expression as may imply or carry within it an affirmative.

2. **Mortgages.** In order to constitute a mortgage the relation of debtor and creditor must exist.

3. **Evidence** examined, and *held* to negative the claim that a certain deed, absolute in form, was intended as a mortgage.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*Talbot & Allen* and *Hainer & Smith,* for appellants.

*F. A. Boehmer* and *I. P. Hewitt,* contra.

ALBERT, C.

This suit was brought by William Lemke against John and Mary Lemke to quiet the title to 100 acres of land in Lancaster county. The defendants are husband and wife, their marriage antedating the several conveyances hereinafter mentioned. The plaintiff and the defendant John

are brothers. Their father died while they were quite young, and their mother, who is referred to in the record as "Mother Lemke," afterwards intermarried with their uncle, Charles Lemke. On and prior to the 22d day of January, 1887, the defendant John held the legal title to a 200-acre tract of land, which he resided upon with his wife and children, and cultivated as one farm. The 100 acres in dispute is a part of that tract. He was improvident and addicted to the excessive use of intoxicants. The 200 acre tract was incumbered by mortgages, aggregating about $2,700, and proceedings for the foreclosure thereof were pending. In addition to the mortgage indebtedness, he owed unsecured debts, aggregating some $3,500, which were being pressed for payment. At this juncture a family council was held, in which the parties to this suit, mother Lemke and her husband, Charles Lemke, the stepfather of the plaintiff and the defendant John, participated. It was there decided that the defendants should convey the 200 acres to Charles Lemke, who should pay off the debts. In pursuance of this arrangement the defendants executed and delivered a warranty deed to the land to Charles Lemke, who thereupon paid off the mortgage indebtedness, and subsequently paid the unsecured debts. Whether the family arrangement, when it was made, contemplated that he should also pay off the unsecured debts is not quite clear, but such appears to have been the construction placed upon it by the parties interested. The defendants continued in possession of the 200-acre tract after the conveyance to Charles Lemke without any change, save that they delivered a portion of the crops to him from time to time. Mother Lemke owned a small amount of land in her own right. It would seem that she also insisted that her children by her former husband were entitled, through her, to some provision out of the estate of her second husband, who owned considerable real estate besides the 200 acres just mentioned. This gave rise to some dispute between them, and presented what to them appeared to be an intricate problem.

In 1894 they learned of the enactment of the Baker law, changing the law of descent (since declared unconstitutional), which added to their perplexities. Another family council was held, at which all present at the one held in 1887, except the defendant Mary, participated. In pursuance of a decision there reached, in March, 1894, mother Lemke released her right of dower in the lands of her husband; he conveyed the 200-acre tract, and an additional 40 acres, to the plaintiff, who executed a mortgage on 100 acres of the 200-acre tract for $1,250, and another for $1,750 on the remaining 140 acres, in favor of his mother, mother Lemke, for the benefit of his two sisters, and thereupon conveyed the 140 acres to certain minor children of the defendants, retaining the remaining 100 acres—the land in dispute—as his share under the division agreed upon. The 140 acres was in fact the share allotted to the defendant John in the division, but the title was conveyed to his children instead of to him on account of his debts and improvident habits. Ever since the date last mentioned the defendants have occupied the 140-acre tract conveyed to their minor children. For two years after that date the defendant John had possession of the 100-acre tract allotted to the plaintiff under the family arrangement, but during that time held it as plaintiff's tenant. Since that time the plaintiff has either cultivated the 100-acre tract himself or leased it to strangers. In March, 1905, the plaintiff was negotiating a sale of the 100-acre tract, and the defendants made and filed with the register of deeds a notice to the effect that their conveyance to Charles Lemke in 1887 was made to secure the repayment of a loan, and for no other purpose, and that they were the owners of the land in dispute. In May following the plaintiff commenced this suit to quiet his title as against the claim thus made and asserted by the defendants. The trial court found generally for the plaintiff and granted the relief prayed. The defendants appeal.

The decisive question in this case is whether the con-

veyance of the 200-acre tract, which includes the land in dispute, from the defendants to Charles Lemke in 1887 was intended as an absolute conveyance or merely as security for the money to be advanced by him in payment of John's debts. The defendants contend that it stands admitted that their conveyance of that date was intended merely as a mortgage. This contention is based on certain features of the pleadings, which we shall proceed to examine. The petition, after tracing plaintiff's title to the land in dispute and referring to the defendant's claim that their conveyance of the 200-acre tract to Charles Lemke in 1887 was merely intended as a mortgage, alleges: "Plaintiff alleges that the defendants in reality, truth and fact have no interest, claim or demand of any kind in said land, and that if it were true that the title to the same was in fact transferred to Charles Lemke in trust to secure him upon a loan made, which fact this plaintiff specifically denies, then this plaintiff had no notice of said fact, and he relied on the records and then paid the purchase price for said land in good faith, and that the defendants cannot at this time have any valid claim against said premises." The answer reiterates the defendants' claim that such conveyance was intended merely as a mortgage, and charges that the conveyance by Charles Lemke to the plaintiff in 1894 was a conveyance of the bare legal title; that the plaintiff had participated in the several family meetings, where the conveyance from the defendants to Charles Lemke, as well as that from Charles Lemke to the plaintiff, was discussed, and had full knowledge of all the facts and the defendants' equitable title to the land, and took title subject thereto. In his reply the plaintiff, after entering a general denial, denies "that he had any knowledge or information of any kind that the warranty deed given by these defendants to Charles Lemke for the land in controversy was given to secure said Lemke for moneys advanced by him for these defendants. He denies being present at any conversation or at any time when these matters were agreed to by

Lemke v. Lemke.

said parties, and denies that he ever agreed to or was a party to any agreement made between Charles Lemke and the defendant, John Lemke, excepting the one hereinafter set forth."

It is claimed that the denial in that portion of the petition quoted of defendants' claim that the conveyance to Charles Lemke was intended merely as security for a debt, as well as those in the reply, is in the nature of a negative pregnant. "A negative pregnant is such a form of negative expression as may imply or carry within it an affirmative." Stephen, Pleading (2d. ed.), sec. 232. It arises when a denial is so worded as to imply an affirmative of the allegation intended to be denied. Bliss, Code Pleading (2d ed.), sec. 315. We do not think the plaintiff's denials, on a reasonable construction of his pleadings, come within the definition of a negative pregnant. The language used, taken in its ordinary sense, clearly shows an intention on the part of the plaintiff, not only to negative the claim of the defendants that the conveyance was intended merely as a mortgage, but also to allege certain facts relied upon to show that he would not be bound by such intention, even had it existed. The intention of the pleader, when clear, as in this case, rather than technical rules must govern in the construction of pleadings.

We come now to the evidence, which covers some 300 pages of closely written typewriting. We cannot review it at length. In our opinion it negatives the defendants' claim that their conveyance to Charles Lemke was intended merely as security for the money to be advanced by him to pay John's debts. Mother Lemke died before the litigation commenced. Charles Lemke was a witness in the case. He appears to be just and fair, and to stand indifferent between the parties. From his testimony it is quite clear that mother Lemke considered that whatever she had, might accumulate or receive from her second husband as her share of their joint accumulations was for

37

the benefit of her children and to be divided among them either in her lifetime or after her death. She was a German with the instinct of that race against any part of the family possessions passing into other hands strongly developed. She regarded herself and husband and her children by her former husband as one family, and their accumulations, to some extent apparently, as community property. When the foreclosure proceedings were instituted against the defendants in 1887 it was mother Lemke that insisted that steps be taken to prevent the loss of the 200-acre tract to the family, that is, the entire Lemke family. With that end in view she brought about the family arrangement whereby the land was conveyed to her husband and he discharged the mortgage indebtedness and paid off the other debts which John owed. The evidence satisfies us that this was done without any agreement that her husband Charles should hold the land as security for the money advanced by him, but rather with a view to holding it as a part of the estate, which at some time was to be apportioned among the members of the entire family, and that such was the understanding of all the parties. The family arrangements were consummated by that made in 1894, when what mother Lemke regarded as her share of the family estate was divided among her children; John's children, for the reasons already stated taking his share. We find nothing in the record to lead us to believe that it was the intention or understanding of any of the parties to the several transactions that the defendants, or either of them, became liable to Charles Lemke for the amount of the indebtedness he undertook to discharge for John when the conveyance was made. The intention of the parties governs. Unless they intended that the relation of debtor and creditor should arise as a result of the transaction, they certainly could not have intended that the conveyance was to operate merely as security for a debt. To constitute a mortgage the relation of debtor and creditor must exist. *Budd v. Van Orden*, 33 N. J. Eq. 143; *Westlake v. Horton*, 85 Ill. 228; *Sam-*

*uelson v. Mickey,* 73 Neb. 852. In this case we are satisfied there was no intention to create a debt, and consequently that there was no intention that the conveyance should operate as a mortgage.

It is true that defendant John gave Charles Lemke a portion of the crop raised on the land from time to time until the division was made in 1894, but it is clear that he did so, not in recognition of any liability on account of the debts paid for him by Charles Lemke, but rather in recognition of an obligation to pay something for the use of the land. The family adjustment made in 1894 appears to have been just and equitable. It stood without complaint more than ten years. We have been shown no good reason why it should be set aside.

It is recommended that the decree of the district court be affirmed.

DUFFIE and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the decree of the district court is

AFFIRMED.